UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CORNELIUS PAMES,<br>　　Plaintiff, | Case No. 1:12-cv-285 |
| vs. | Weber, J.<br>Litkovitz, M.J. |
| MICHAEL PIERCE,<br>　　Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Cornelius Pames filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 while he was an inmate in the custody of the Ohio Department of Youth Services (ODYS). Plaintiff brings this action against defendant Michael Pierce in his individual capacity for violations of plaintiff's Eighth and Fourteenth Amendment rights. This matter is before the Court on defendant's motion for summary judgment (Doc. 34), plaintiff's response in opposition to the motion (Doc. 42), and defendant's reply in support of the motion (Doc. 43).

## I. Introduction

Plaintiff alleges that while he was incarcerated at the now defunct Ohio River Valley Juvenile Correctional Facility (ORV) in Scioto County, Ohio, defendant Pierce, a Youth Specialist assigned to ORV, violated his Eighth and Fourteenth Amendment rights by using unreasonable, unnecessary and excessive force against him. (Doc. 3, ¶¶ 5, 6, 17, 18). Plaintiff seeks the following relief: (1) an award of "non-economic damages, including pain and suffering and emotional distress"; (2) punitive damages; (3) an award of attorney fees and costs; and (4) all other relief available under law or equity under the circumstances. (*Id.* at p. 4).

**II. Motion for Summary Judgment**

Defendant Pierce moves for summary judgment on plaintiff's claims against him. (Doc. 34). Defendant contends that plaintiff cannot pursue his excessive force claim under the Fourteenth Amendment and that his Eighth Amendment claim must be dismissed on three grounds. First, defendant contends that plaintiff's Eighth Amendment claim fails as a matter of law because plaintiff cannot satisfy either the subjective prong or the objective prong of an excessive force claim under the Eighth Amendment. (*Id.* at 6-20). Defendant alleges that he reasonably reacted to a perceived threat of assault by plaintiff and that any injury plaintiff sustained was *de minimis*. Further, defendant contends that the Prison Litigation Reform Act (PLRA) mandates dismissal of plaintiff's excessive force claim because the PLRA requires that an inmate must sustain more than a *de minimis* physical injury in order to proceed with an Eighth Amendment claim. (*Id.* at 20-21, citing 42 U.S.C. § 1997e(e)). Finally, defendant claims that he is entitled to qualified immunity because no reasonable corrections officer in his position would understand that the force he used to restrain plaintiff and "quell a perceived assault" would constitute a constitutional violation. (*Id.* at 21-22).

In response, plaintiff alleges there are genuine issues of material fact as to (1) defendant's subjective state of mind in using force against him, and (2) the objective level of force defendant used. (Doc. 42). Plaintiff argues there is credible evidence which supports his claim that defendant was angry at plaintiff, defendant instigated the altercation in question, and he attacked plaintiff. Plaintiff contends that his version of events is not blatantly contradicted by the record and a reasonable jury could therefore believe his account. Plaintiff further argues that regardless of whether his injuries could be characterized as *de minimis*, there is a genuine issue of material fact as to whether the force defendant used was excessive under the objective prong of an Eighth

2

Amendment excessive force claim. Finally, plaintiff argues that defendant is not entitled to qualified immunity because the law was clearly established on the date of the incident giving rise to plaintiff's claim and there are factual issues surrounding the incident.

### III. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). Although the Court should review the record as a whole, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Supreme Court has repeatedly instructed the courts that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150 (quoting *Anderson*, 477 U.S. at 255) (internal quotation marks omitted). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## IV. Facts

There is no dispute that on December 3, 2010, plaintiff was in the custody of ORV and defendant was a Youth Specialist at the facility. It is also undisputed that on the afternoon of December 3, 2010, plaintiff and defendant had a verbal dispute which ended when plaintiff threw a trash can in the middle of the housing unit at ORV and then retreated to his room. (Doc. 31, Pltf. Depo. at 9-10; Doc. 30, Deft. Depo at 24-25). The parties dispute the circumstances surrounding a second incident which occurred that evening, which is the incident giving rise to this lawsuit.

Plaintiff's version of events is as follows: Defendant was angry with plaintiff after the trash can incident. (Doc. 31, Pltf. Depo. at 17). Plaintiff knew this because defendant had told other youth he was mad and was going "to get" plaintiff, and defendant's face was red. (*Id.* at 17-18). Approximately an hour after the trash can incident, at "early bedtime," plaintiff was standing up in his room making his bed and defendant was passing out snacks, at which time defendant entered plaintiff's room to ostensibly give plaintiff his snack. (*Id.* at 12-13, 16). Defendant pretended he was giving plaintiff his snack but instead squeezed a juice container and threw it in the air, causing the juice to spill all over the two of them. (*Id.* at 13-14). Plaintiff was shocked and told defendant to get out of his room. (*Id.* at 21). Defendant rushed plaintiff, and

4

plaintiff stopped and moved out of the way. (*Id.* at 20). Defendant then began choking and punching plaintiff. (*Id.* at 14, 22). Defendant choked plaintiff for about 30 seconds and punched him on his right eye and body about four times. (*Id.* at 22-23). Plaintiff went down to the floor so defendant could handcuff him and stop hitting him, at which point defendant straddled plaintiff, started twisting his arm, and bent his hand back so that plaintiff's fingers were touching his wrist as though defendant was trying to break it. (*Id.* at 23, 32). Youth Specialist Maynard came in and put plaintiff in handcuffs. (*Id.*) Plaintiff was leaning on the bed. (*Id.*). Someone from the medical unit came and checked plaintiff, but he did not have any injuries at that time and plaintiff did not tell medical personnel that he had any injuries when he was checked. (*Id.* at 23-24). Later he was "a little swollen" under his right eye, which was "puffy." (*Id.* at 24-25). Plaintiff did not receive any medical care for his eye or tell anyone about the injury, but he got some ice and applied it himself. (*Id.*). Plaintiff did not have any symptoms, such as trouble with his vision, headaches, or nausea, and he never asked to see medical personnel for injuries after this incident. (*Id.*). By the time of the investigation, which took place a few weeks after the incident, plaintiff no longer had a swollen eye, he told the investigator that he had no injuries at that time, and he did not tell the investigator about his swollen eye. (*Id.* at 26).

Defendant's version of the use of force incident differs from plaintiff's account in many material respects. Defendant testified as follows at his deposition: Later in the day after the trash can incident, defendant came into plaintiff's room and handed plaintiff his snack. (Doc. 30, Deft. Depo. at 26, 28-29). Plaintiff grabbed his juice, squeezed it, and threw it all over defendant. (*Id.*). Defendant then attempted to "bear hug" plaintiff, at which point plaintiff lowered himself, defendant attempted a second "bear hug," and they both fell to the bed. (*Id.* at 26, 30-31). Defendant told plaintiff to turn over, which he did, and defendant told plaintiff to

give him his hand. (*Id*. at 26-27). Plaintiff briefly resisted as defendant was trying to get his hands from under plaintiff but then plaintiff put his hands back. (*Id*. at 27-28). Plaintiff did not resist as defendant started handcuffing his left hand. (*Id*. at 28). Another man came in and cuffed plaintiff's right hand, and then they exited the room. (*Id*.). At the time of the incident, defendant was 6'3" and weighed 250 pounds, and he estimated plaintiff's height to be 5'9" and his weight to be 140 pounds. (*Id*. at 39). Defendant testified that he did not move backwards or leave the room instead of using force on plaintiff because he was threatened and scared and he did not want plaintiff to assault him again, hit him, or throw something at him. (*Id*. at 39-40, 57).

## V. Resolution

### 1. Title 42 U.S.C. § 1997e(e) does not require dismissal of plaintiff's claim.

Defendant alleges that plaintiff's Eighth Amendment claim must be dismissed under 42 U.S.C. § 1997e(e) because plaintiff has not shown more than a *de minimis* physical injury. The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See Merch. v. Hawk-Sawyer*, 37 F. App'x 143, 145-46 (6th Cir. 2002). The PLRA's physical injury requirement weeds out frivolous claims where only emotional injuries are alleged. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (citing, *e.g., Cox v. Malone*, 199 F. Supp.2d 135, 140 (S.D. N.Y. 2002)).

Here, plaintiff does not allege only mental and emotional injury. To the contrary, plaintiff alleges in the complaint that he also suffered physical injury as a result of the alleged use of excessive force by defendant. (Complaint, Doc. 3, ¶ 16). Moreover, plaintiff seeks damages for pain and suffering in addition to emotional distress. (*Id*. at p. 4). Accordingly,

6

because plaintiff's civil action is not limited to allegations of emotional or mental injury, dismissal of plaintiff's civil action pursuant to 42 U.S.C. § 1997e(e) is not warranted.

**2. The Eighth Amendment applies to plaintiff's excessive force claim.**

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The parties disagree on whether plaintiff's excessive force claim can be brought under the Fourteenth Amendment or whether plaintiff must proceed exclusively under the Eighth Amendment. Defendant asserts that a prisoner's post-conviction excessive force claim can be brought only under the Eighth Amendment. (Doc. 34 at 6 n.1, citing *Gregg v. Ohio Dept. of Youth Servs.*, 661 F. Supp.2d 842, 854 (S.D. Ohio 2009) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995)). Plaintiff cites two cases to show defendant's position is incorrect and argues that *Gregg* did not establish that the Eighth Amendment standard must be applied in all excessive force cases. (Doc. 42 at 8 n.3, citing *Youngberg v. Romeo*, 457 U.S. 307, 321, 324 (1982) (holding that individual who was involuntarily committed to state institution for the mentally disabled had constitutionally protected liberty interests under the Fourteenth Amendment to reasonably safe conditions of confinement, among other rights); *Miletic v. Natalucci-Persichetti*, No. C-3-89-299, 1992 WL 1258522, at *4 (S.D. Ohio Feb. 6, 1992) (stating that "a juvenile with severe emotional problems who is involuntarily committed to a correctional as opposed to a mental health facility has a right to treatment under the Fourteenth Amendment similar to that which was recognized in *Youngberg*")). Plaintiff suggests that the Fourteenth Amendment "provides greater protection with less deference to officials" as compared to the Eighth Amendment. (Doc. 42 at 8, n.3).

The cases plaintiff cites to show that his excessive force claim is properly brought under the Fourteenth Amendment are inapposite. Both cases involved a juvenile who was involuntarily committed to a facility, and there is no allegation here that plaintiff had been involuntarily committed to ORV as opposed to being incarcerated there after being adjudicated delinquent. Plaintiff has not cited any cases which show that an excessive force claim can be brought under the Fourteenth Amendment by a juvenile in custody post-conviction. In any event, the case law recognizes that application of the Eighth and Fourteenth Amendments to an excessive force claim is substantially similar. *See Trenn v. Harkness*, 2:13-CV-407, 2014 WL 619480 (S.D. Ohio Feb. 18, 2014) (holding it was not necessary to determine whether the Eighth or Fourteenth Amendment applied to excessive force claim brought by a juvenile in custody of ODYS given similarity in application of the two constitutional standards, and applying Eighth Amendment to the juvenile plaintiff's claim) (citing *Gregg*, 661 F. Supp.2d at 854; *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (under either Eighth or Fourteenth Amendment, "an excessive-force claimant must show something more than *de minimis* force.")). Accordingly, the Court finds that plaintiff's excessive force claim is properly analyzed under the Eighth Amendment.

### 3. There are genuine issues of material fact underlying plaintiff's Eighth Amendment claim.

An Eighth Amendment claim has both an objective and subjective component. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury. . . ." *Id.* at 34. In making this

8

inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-321. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Hudson*, 501 U.S. at 7. "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney*, __ F.3d __, 2014 WL 3455556, at *5 (6th Cir. July 16, 2014) (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* (quoting *Hudson*, 503 U.S. at 9).

"[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (citing *Whitley*, 475 U.S. 312; *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Conversely, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). A *de minimis* use of physical force does not violate the Eighth Amendment's prohibition against cruel and unusual punishments "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force

claim." *Id.* at 38 (citing *Hudson*, 503 U.S. at 9) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Here, the parties' conflicting versions of the events that occurred on December 3, 2010, present genuine issues of material fact which preclude granting summary judgment in favor of defendant on plaintiff's excessive force claim. There are numerous disputed material facts as to the need for the use of force; the relationship between the need for defendant's use of force and the type and amount of the force used; and the threat reasonably perceived by defendant. Defendant testified at his deposition that plaintiff assaulted him by throwing juice on him and he feared that plaintiff would take additional assaultive behavior toward him after throwing the juice on him.[1] (Deft. Depo., Doc. 30 at 39-40). However, accepting as true plaintiff's version of events, he did not initially assault defendant, but instead it was defendant who threw the juice on plaintiff. (Pltf. Depo., Doc. 31 at 13-14). In fact, according to plaintiff, the incident was premeditated by defendant and was in retaliation for the parties' verbal disagreement and the trash can episode which had occurred earlier in the day. (*Id.* at 17-18). Under this scenario, there was no need whatsoever for defendant's use of force because defendant instigated the confrontation with plaintiff. Even assuming plaintiff did throw juice on defendant, the circumstances surrounding the episode raise a genuine issue as to whether any type of force was nonetheless required. Although defendant indicates that the potential for "riotous, even deadly, behavior" can erupt when just one youth acts in a disruptive and agitating manner (Doc. 34 at

---

[1] In support of his argument that he reasonably perceived plaintiff to pose a threat, defendant points to his deposition testimony that he knew plaintiff to be "aggressive" before the December 3, 2010 incident. (Doc. 34 at 11, citing Doc. 30, Deft. Depo. at 23). However, defendant explained at his deposition that he would have characterized plaintiff as "aggressive" prior to the incident because of "[h]is mouth" and defendant was "not sure" if plaintiff was physically aggressive. (Doc. 30, Deft. Dep. at 23-24). This testimony thus falls far short of establishing a reasonable fear of assault on the date in question. Defendant also argues that the ODYS records of plaintiff's behavior and discipline history, both before and after the incident, support defendant's testimony that "he grabbed Plaintiff because he feared additional assaultive acts." (Doc. 34. at 11-12, citing Exhs. A-1, A-3, C-1 at 1, 4). Defendant has not, however, pointed to any evidence to show he had knowledge of these records prior to December

10

13), the record indicates that plaintiff and defendant were the only two people in the cell, defendant weighed nearly twice as much as plaintiff and was almost a half-foot taller, and plaintiff did not have a weapon of any sort. (Doc. 30, Deft. Depo. at 39, 73). In light of these circumstances, a reasonable jury could question whether defendant actually felt threatened or feared more serious assaultive behavior by plaintiff, and could further conclude that defendant's act of remaining in the cell and using force against plaintiff instead of removing himself from the situation, such as by backing out of the cell, was not reasonable. Finally, although the injury plaintiff claims he suffered was *de minimis*, this is not determinative; instead, while the absence of a serious injury is certainly relevant, "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Wilkins*, 559 U.S. at 37 (quotations omitted). Accepting plaintiff's version of the incident, a reasonable jury could find that choking, punching, restraining, and handcuffing plaintiff and bending his fingers back after deliberately throwing juice on him in retaliation for an earlier disagreement was unreasonable and excessive.[2]

**4. Defendant is not entitled to qualified immunity on plaintiff's Eighth Amendment claim.**

Defendant asserts he is entitled to qualified immunity from liability on plaintiff's excessive force claim. Government officials performing discretionary functions generally are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defendant raises a qualified

---

3, 2010. Absent any such evidence, the ODYS records have no bearing on defendant's state of mind on that date.

[2] Defendant argues that plaintiff's deposition testimony need not be considered by the Court because it includes a number of contradictions and inconsistencies. (Doc. 34 at 15-20). It is for the jury, not the Court, to weigh the evidence and make required credibility determinations. *Reeves*, 530 U.S. at 151; *Cordell*, __ F.3d at __, 2014 WL 345556, at *11.

11

immunity defense, "it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). The Court applies a two-prong test to qualified immunity claims, determining "whether the facts that a plaintiff has . . . alleged make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). The Court may exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances. *Id.* at 236. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam) (internal citations omitted).

Because the Court concludes that a reasonable jury could determine that defendant violated plaintiff's Eighth Amendment rights, the Court must assess whether those Eighth Amendment rights were clearly established in December 2010. In other words, would a reasonable official in defendant's position have understood that under the particular circumstances presented he was violating the Eighth Amendment. *Cordell*, __ F.3d at __, 2014 WL 3455556, at *12.

Defendant alleges that a reasonable officer in his position would not know that using a "bear-hug response" to quell a perceived assault would violate an individual's constitutional rights. (Doc. 34 at 22). But granting defendant qualified immunity based on this evidence would require the Court to credit his version of events over that of plaintiff's and resolve the

factual issues identified above in defendant's favor, which the Court may not do on summary judgment. *Cotton*, 134 S.Ct. at 1866. Here, plaintiff has come forward with evidence which raises factual issues as to whether defendant reasonably perceived a threat of assault by plaintiff and went beyond simply using a "bear-hug response." Under plaintiff's version of events, defendant choked, punched, restrained, and handcuffed plaintiff and bent his fingers back after deliberately throwing juice on him in retaliation for an earlier disagreement. Accepting as true plaintiff's account of the incident and drawing all reasonable inferences therefrom in plaintiff's favor, as the Court must, plaintiff demonstrates a colorable claim of excessive use of force in violation of plaintiff's Eighth Amendment rights. "If there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable jail official would have known such conduct was wrongful." *Cordell*, __ F.3d at __, 2014 WL 3455556, at *13 (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 642 (6th Cir. 2001)). Accordingly, defendant should not be found entitled to qualified immunity on plaintiff's Eighth Amendment claim.

## VI. Conclusion

Viewing the facts and evidence in the light most favorable to plaintiff, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a jury could reasonably infer that defendant's use of force against plaintiff was not a good faith use of force exercised in pursuit of valid penological objectives but instead was intended to inflict harm on plaintiff in retaliation for plaintiff's prior conflict with defendant. Summary judgment in favor of defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain" under the applicable standard. *Whitley*, 475 U.S. at 322. In considering the reasons for defendant's use of

force, the type and amount of the force used, and the extent of the injury inflicted, a fair-minded jury could return a verdict for plaintiff on his Eighth Amendment excessive force claim. Thus, defendant should not be granted summary judgment as a matter of law on plaintiff's excessive use of force claim brought under the Eighth Amendment.

## IT IS THEREFORE RECOMMENDED THAT:

Defendant Pierce's motion for summary judgment on plaintiff's claim for excessive force under the Eighth Amendment be **DENIED**.

Date: 7/25/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORNELIUS PAMES,
    Plaintiff,

vs.

MICHAEL PIERCE,
    Defendant.

Case No. 1:12-cv-285

Weber, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).